SHEEHY v. CLAUSEN et al.

(Supreme Court, Special Term, New York County. February 6, 1899.)

1. MUNICIPALITIES—PARKS—CONSENT TO ERECT POLES AND STRING WIRES.

Laws 1892, c. 263, § 2, and Greater New York Charter, § 584, prohibit the erection of poles and the stringing of wires in streets without the consent of the commissioner of public buildings, lighting, and supplies. Consolidation Act, § 668, gives the park board power to manage and control all public parks. Section 690, as amended by Laws 1892, c. 365, confers the same power; also power to pass ordinances for their regulation and government. Section 691 gives it power to decide when and where new lamps shall be put in any park. Greater New York Charter, § 612, makes it the duty of the park commissioner to maintain the beauty and utility of parks, and to determine when and where new lamps shall be put. *Held,* that an electric light company cannot erect poles and string wires along the avenues of a park without the consent of both the park commissioner and the commissioner of public buildings.

2. SAME—WAIVER—COLLUSION.

Under the statute providing for an action against a public officer to prevent waste or injury to public property, an action will not lie against the commissioner of public buildings, etc., as for collusion, because he has knowledge that poles are being erected and wires strung in a street without his consent, since he may waive the requirement of consent. ·

3 SAME—INJURY TO CITY PROPERTY.
　　The erection of poles and the stringing of wires in a street already occupied by a street railroad and another set of poles and wires are not an "injury or waste" to the city, within a statute providing for actions against officers to prevent "injury or waste" to public property.

Suit by Edward C. Sheehy against George C. Clausen and others, composing the park board of the city of New York, and others. Complaint dismissed.

　　Joseph I. Green, for plaintiff.
　　Atwater & Cruikshank, for defendants.

MATTICE, J.　The plaintiff, as a taxpayer, brings this action to restrain certain public officers of the city of New York from the commission of alleged illegal acts, which, if committed, it is claimed, would be a waste of the property of the city.　The action was commenced before the Greater New York charter went into effect, and was aimed at the commissioners of the department of public parks and the board of electrical control and the Bronx Gas & Electric Company.　It sought to prevent the last-named company from erecting poles and stringing wires along the highways and avenues in Pelham Bay Park, without first obtaining a permit from the board of electrical control.　A temporary injunction order was granted, which was reversed on appeal, upon the ground that the complaint did not state facts sufficient to constitute a cause of action.　26 App. Div. 140, 49 N. Y. Supp. 1088. Thereafter the plaintiff obtained an order permitting him to amend his complaint.　The amended complaint brings in as party defendants the commissioners of public parks, appointed under the new charter, and also the commissioner of public buildings, lighting, and supplies, likewise appointed.　The amended complaint, in order to meet the defect in the original complaint which plaintiff's counsel supposed was pointed out by the appellate division, sets forth an additional allegation to the effect that the board of commissioners of the department of public parks illegally granted a permit to the Bronx Gas & Electric Company to do the acts complained of, to wit, excavate, erect poles, and string wires in and along the avenues in Pelham Bay Park, and that their successors, the commissioners of public parks, and the commissioners of the board of electrical control, and their successor, the commissioner of public buildings, lighting, and supplies, had actual notice of such alleged illegal acts.

By section 616 of the Greater New York charter, any of the powers and duties heretofore possessed by the commissioners of the department of public parks devolve upon their successors, the commissioners of public parks.　By a like devolution, the commissioner of public buildings, lighting, and supplies succeeds to the powers and duties of the former commissioners of the board of electrical control.　Id. § 588. The plaintiff contends that the sole and exclusive power to grant the permit necessary to enable the defendant the Bronx Gas & Electric Company to legally erect poles and string wires through the avenues of the park resided with the commissioners of the board of electrical control, and now with the commissioner of public buildings, lighting,

and supplies. The counsel for defendants are equally sure that such exclusive power is in the park board.

The statutes are somewhat confusing. Section 4 of chapter 716 of the Laws of 1887 reads in part as follows:

"It shall be unlawful after the passage of this act for any corporation or individual, to take up the pavements of the streets of said city, or to excavate in any of said streets for the purpose of laying underground any electrical conductors, unless a permit, in writing therefor, shall have been first obtained from the said board, or its predecessor, and except with such permission, no electrical conductors, poles or other figures or devices therefor, nor any wires, shall hereafter be continued, constructed, erected or maintained or strung above ground in any part of said city."

Section 2 of chapter 263 of the Laws of 1892 reads as follows:

"It shall be unlawful, after the passage of this act, for any corporation or individual to take up the pavements of the streets of said city, or to excavate in any of said streets for the purpose of laying underground any electrical conductors or constructing any conduit or subway for the reception of electrical conductors, unless a permit in writing therefor shall have been first obtained from said board and except with such permission, no electrical conductors, poles or other figures or devices therefor, nor any wires shall hereafter be continued, constructed, erected or maintained or strung above ground in any part of said city."

As before stated, the powers and duties of the board of electrical control devolve upon the commissioner of the department of public buildings, lighting, and supplies by virtue of the Greater New York charter (section 586). Section 584 of the new charter reads as follows:

"It shall be unlawful, after the passage of this act, for any person or corporation to take up the pavement of any of the streets and parks of said city, or to excavate for the purpose of laying under ground any electrical conductors, or to construct subways, unless permission in writing therefor shall have been first obtained from the said commissioner of public buildings, lighting and supplies, endorsed by the commissioner of highways. And except with a like permission therefor, no electrical conductors, poles, wires or other electrical devices or fixtures shall be constructed, erected, strung, laid or maintained above or below the surface of any street, avenue, highway or other public place, in any part of said city."

The foregoing provisions would seem to confer exclusive power upon the board of electrical control or its successor, but they must be read in connection with the sections defining the powers and duties of the park board. By section 668 of the consolidated act, the park board is given the power to manage and control all public parks. Section 690, as amended by chapter 365, Laws 1892, gives the board "full and exclusive power to govern, manage and direct the several public parks, squares and places, and to pass ordinances for the regulation and government thereof." Section 691 provides that "the department of public parks shall have exclusive authority to decide when and where any new lamps shall be put and lighted in any park placed under its control." Section 612 of the Greater New York charter makes it the duty of the park commissioner "to maintain the beauty and utility" of parks within his jurisdiction, "and to determine when and where new lamps or lighting appliances shall be placed or lighted." Power is also given to plant trees, erect seats, drinking fountains, statues, and

works of art on any part of the public streets and avenues within the park.

If force and effect is to be given to all these provisions of the statutes, then it must be held that it was necessary for the defendant the Bronx Gas & Electric Company to obtain a permit from both the park board and board of electrical control before it could lawfully erect its poles and string wires along the avenues of the park. I think it is manifest that the powers and duties imposed upon the commissioner of parks render it imperative that his consent be obtained before a park could be invaded by a gas or electric company, solely upon the permit of the commissioner of public buildings, lighting, and supplies. The language of the section above quoted would seem also to require the consent of the commissioner last referred to. If this view is correct, then no cause of action is made out against the defendants the commissioners of public parks. Their act in granting the permit was within their powers, and, moreover, it was an exercise of discretionary power, with which this court has nothing to do, in the absence of fraud or collusion. But, if it be conceded that the park board had no jurisdiction, then, as hereafter shown, the granting of the permit was a harmless attempt to exercise a power not possessed, and resulted in no waste or injury. Neither is a cause of action alleged or proven against the board of electrical control or its successor, the commissioner of public buildings, lighting, and supplies. The bare fact that the commissioners of the board of electrical control or their successor had knowledge that the gas and electric company was erecting poles and stringing wires does not bring them within the condemnation of the statute under which plaintiff complains. The plaintiff's counsel is in error in supposing that the learned appellate division held or intended to hold any such proposition. The reference by McLaughlin, J., in his opinion, to the fact that the original complaint did not even charge the defendants with actual or constructive notice of the acts of the gas company, was intended only to forcibly illustrate how utterly destitute the complaint was of even the semblance of a cause of action. The statute was not designed to redress every wrong. It is directed against public officers, as such, who have done or are about to do a dishonest and illegal act. The mere fact that the public officer was aware of the wrongful act of the gas and electric company would not indicate fraud or collusion or want of good faith on the part of the officer. His failure to take steps to prevent the erection of the poles and wires would indicate that he intended to waive the formal permit, or intended thereafter to grant one if applied for. Manifestly, the granting or refusal of a permit was wholly within the discretion of such officer, formerly the board of electrical control.

The most radical defect, however, in the plaintiff's proof, is his failure to show that the acts of the park board and the failure to act on the part of the board of electrical control or its successor have resulted or will result in injury or waste to the property of the city. No matter how irregular or wrongful the acts or threatened acts may be, it must appear that waste or injury to the property of the city will follow. The only rights, if any, the gas company acquired or could acquire by reason of the permit, was a mere revocable license to erect

poles and string wires along the highway. Greater New York charter, § 585; Hart v. City of New York, 16 App. Div. 227, 44 N. Y. Supp. 767. It is not even claimed that any franchise was granted or right surrendered. Counsel for plaintiff claims that injury or waste results because the "beauty and utility" of the park is destroyed or impaired. The poles were erected and the wires strung in the usual way. The highway was already occupied by a street-surface railroad, and by the poles and wires of another company. To my mind, the claim that the beauty of the park was marred, and its utility lessened, to the extent of constituting waste or injury to the property of the city of New York, is quite untenable. This is especially so in view of the fact that the park commissioner, who was charged by law with the duty of preserving the "beauty and utility" of the park, had given the permit and supervised the work personally. The plaintiff therefore cannot have the relief sought.

The complaint must be dismissed on the merits, with costs. Defendants' counsel will prepare findings which may be settled upon five days' notice.